UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

PAUL J. KOCIELKO,

    Petitioner,

    v.

SUPERINTENDENT,

    Respondent.

CAUSE NO.: 3:15-CV-436-RLM-MGG

## OPINION AND ORDER

Paul J. Kocielko, a prisoner without a lawyer, filed a habeas corpus petition to challenge his conviction for two counts of sexual misconduct with a minor under Cause No. 20D03-708-FB-59. On February 4, 2010, after a jury trial, the Elkhart Superior Court sentenced Mr. Kocielko as a habitual offender to fifty years of incarceration.

## FACTUAL BACKGROUND

In deciding this petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court of Appeals of Indiana summarized the evidence presented at trial:

> On August 8, 2007, Kocielko took his fourteen-year-old stepdaughter, A.Q., to a Knights Inn in Elkhart and rented a room with one double bed. Kocielko gave A.Q. several drinks of peppermint flavored whiskey until A.Q. was dizzy and "out of it, drunk." After the two watched television and exchanged back rubs, Kocielko stated that he was tired and turned out the lights.
>
> A.Q. was lying on the bed with her back to Kocielko when Kocielko took her left hand, placed it on his penis, and "moved it around in a circular motion." Kocielko pulled down A.Q.'s basketball shorts and

underwear to her mid-thigh. He then penetrated A.Q.'s anus with his penis causing her "horribly bad" pain.

The next day, Kocielko took A.Q. to her step-grandparents' house. A.Q. bathed, changed clothes, and hid the bloodied underwear that she had worn the night before. Initially, Kocielko and A.Q. agreed not to tell anyone about the drinking or sexual activity and A.Q. assured Kocielko that she had thrown away her underwear. However, after a few days passed, A.Q. told her aunt about the molestation and showed her the previously-hidden underwear. With the assistance of her aunt and mother, A.Q. went to the police station, handed over the underwear, and gave a statement implicating Kocielko.

On August 27, 2007, Kocielko was charged with three counts of Sexual Misconduct with a Minor, with one count alleging that Kocielko committed deviate sexual conduct upon A.Q., one count alleging that Kocielko submitted to fondling of his penis by A.Q., and one count alleging that Kocielko fondled A.Q. by touching her breast. The State also alleged Kocielko is a habitual offender. Kocielko was brought to trial on October 29, 2007. The trial ended with a hung jury as to the first two counts and an acquittal on the count of Sexual Misconduct with a Minor by fondling of A.Q.'s breast.

Kocielko's retrial, as to the counts involving deviate sexual conduct and fondling by touching of Kocielko's penis, commenced on January 4, 2010. Kocielko elected to represent himself, with stand-by counsel having been appointed to conduct legal research. The jury found Kocielko guilty of both charges, and also found him to be a habitual offender.

On February 4, 2010, Kocielko was sentenced to twenty years imprisonment on Count I (deviate sexual conduct), enhanced by thirty years, and eight years on Count II (fondling), enhanced by thirty years. The trial court ordered the sentences to be served concurrently, providing for an aggregate sentence of fifty years. Kocielko appeals.

ECF 6-5 at 2-4; Kocielko v. State, 938 N.E.2d 243, 248–49 (Ind. Ct. App. 2010).

Mr. Kocielko argues that he is entitled to habeas corpus relief, alleging that the Double Jeopardy Clause barred his second trial; that the Double Jeopardy Clause barred multiple sentences for crimes that occurred within a single

2

encounter;[1] that he didn't knowingly and intelligently waive his right to trial counsel; and that he was improperly denied a DNA expert to prepare for the second trial. Mr. Kocielko presented these claims to the Indiana Supreme Court and the Court of Appeals of Indiana. ECF 6-3, 6-8. He has properly exhausted his State court remedies, and the court will consider his claims on the merits.

STANDARD OF REVIEW

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Woods v. Donald, 135 S.Ct. 1372, 1376 (2015) (quotations and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in

---

[1] Mr. Kocielko didn't list this ground on his federal habeas petition form, but he presented it in the attached memorandum and at each level of the State courts. Though the claims about the second trial and multiple sentences are similar and, at times, conflated, the court liberally construes the habeas petition in consideration of Mr. Kocielko's pro se status. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

3

federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Woods v. Donald, 135 S. Ct. at 1376 (quotation marks and citations omitted). Criminal defendants are entitled to a fair trial but not a perfect one. Rose v. Clark, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quotation marks omitted).

## ANALYSIS

### *Double Jeopardy*

Mr. Kocielko argues that the state courts made an unreasonable determination that the Double Jeopardy Clause didn't bar his second trial. At the first trial, Mr. Kocielko was charged with three counts of sexual misconduct with a minor: Count I for anal intercourse; Count II for causing the victim's hand to touch and move his penis; and Count III for touching the victim's breasts. Appeal App. 149-50. He argues that his acquittal on Count III at the first trial barred the second trial on Counts I and II, reasoning that Count III constituted a lesser included offense with respect to Count I. Mr. Kocielko further argues that the Indiana courts made an unreasonable determination that he wasn't subjected to multiple punishments for a single offense, reasoning that the charged conduct occurred within a single encounter.

4

The Double Jeopardy Clause protects against: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. United States v. DiFrancesco, 449 U.S. 117, 129 (1980). It doesn't prevent a second prosecution for the same offense following a mistrial. Yeager v. United States, 557 U.S. 110, 118 (2009). An acquittal is implied if "it results from a verdict convicting a defendant on lesser included offenses rendered by a jury charged to consider both greater and lesser included offenses." Ohio v. Johnson, 467 U.S. 493, 502 (1984). "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932). "If each [charged crime] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." Brown v. Ohio, 432 U.S. 161, 166 (1977).

"The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units." *Id.* at 169. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 366 (1983).

5

At the first trial, the victim testified that Mr. Kocielko touched her breasts as he gave her a massage in the hotel room. Tr. 474-502. She further testified that he later declared he was tired and turned off the television and the lights. *Id.* She testified that, as they lay in bed, he placed her hand on his penis and moved it around and shortly thereafter subjected her to anal intercourse. *Id.* Following the first trial, the jury acquitted Mr. Kocielko on Count III but couldn't reach a verdict on Counts I and II. Appeal App. 201-03. At the second trial, the jury convicted Mr. Kocielko on Counts I and II. *Id.* at 972-973. The trial court sentenced Mr. Kocielko to twenty years for Count I and eight years for Count II and also imposed sentence enhancements as a result of finding him to be a habitual offender. *Id.* at 1020.

On appeal, the Court of Appeals of Indiana found no implied acquittal regarding Count III, reasoning that an implied acquittal under a lesser-included offense theory would have required a conviction at the first trial. ECF 6-5 at 4-9. The appellate court also found that although double jeopardy principles barred multiple sentences for crimes arising from a single encounter, they don't prohibit a second trial after an acquittal even if the charged conduct at each trial arose from a single encounter. *Id.* The appellate court applied the *Blockburger* test to each count and found that they were established with independent facts and concluding that the Double Jeopardy Clause did not bar the second trial. *Id.* The appellate court initially found that Mr. Kocielko's dual sentences violated the federal and state constitution because the anal intercourse and touching of

his penis occurred during a single encounter.[2] *Id.* at 9. The appellate court reheard this issue and affirmed the sentences, reasoning that the sentences were a fair reflection of the episodic nature of the crimes. ECF 6-7.

This court can't conclude that the state courts' decisions about the second trial and sentencing were objectively unreasonable. At base, the critical inquiry is whether Counts I, II, and III are the same offense. Though the counts are each supported by evidence of independent acts, the United States Supreme Court has also rejected attempts to evade the Double Jeopardy Clause by parsing a single crime into units in a manner that is inconsistent with the applicable criminal statutes. Brown v. Ohio, 432 U.S. 161, 169 (1977). To assess claims of this nature, "we look to the applicable criminal statute to see what the allowable 'unit' of prosecution is—the minimum amount of activity for which criminal liability attaches." Sanchez-Rengifo v. Caraway, 798 F.3d 532, 537 (7th Cir. 2015); United States v. Two Elk, 536 F.3d 890, 898 (8th Cir. 2008).

Subsection (a) of the Indiana criminal statute for sexual misconduct with a minor prohibits the performance of or submission to "sexual intercourse or other sexual conduct," which includes "an act involving a sex organ of one (1) person and the mouth or anus of another person." Ind. Code. 35-42-4-9. Subsection (b) of this statute prohibits the performance of or submission to "any

---

[2] Though the appellate court references federal constitutional law, it is not clear that the appellate court's rulings on this issue rested on federal grounds. Notably, federal double jeopardy principles do not necessarily bar multiple sentences for crimes arising from a single encounter. *See Missouri v. Hunter*, 459 U.S. 359 (1983) (affirming convictions for robbery and armed criminal action based on the same conduct); *Sanchez-Rengifo v. Caraway*, 798 F.3d 532, 537 (7th Cir. 2015) (affirming multiple sex offense convictions based on a single encounter); *United States v. Two Elk*, 536 F.3d 890, 898 (8th Cir. 2008) (same).

7

fondling or touching, of either the child or the older person, with the intent to arouse or to satisfy the sexual desires of either the child or the older person." *Id.* The plain statutory language suggests that the Indiana General Assembly intended to punish separately each act of anal intercourse and each act of fondling. Moreover, the victim's testimony provides evidentiary support for the conduct as charged: one act of anal intercourse and two separate acts of fondling. Even if, hypothetically, a charge of fondling or touching could be a lesser-included offense of a charge of sexual intercourse or other sexual conduct, it wouldn't matter for purposes of this double jeopardy analysis because Counts I, II, and III each focused on separate acts of sexual misconduct. *See* <u>Blockburger v. United States</u>, 284 U.S. 299, 304 (1932); <u>United States v. Schiro</u>, 679 F.3d 521, 525 (7th Cir. 2012). Because Counts I. II, and III aren't the same offense, Mr. Kocielko hasn't demonstrated a violation of the Double Jeopardy Clause. Mr. Kocielko's claims regarding the second trial and multiple sentences are not a basis for habeas relief.

### *Waiver of Trial Counsel*

Mr. Kocielko argues that the State courts made an unreasonable determination that he knowingly and intelligently waived his right to trial counsel. He argues that the waiver wasn't knowing or intelligent because the trial court did not advise him of the challenges presented by DNA evidence. Criminal defendants may waive the right to trial counsel if the waiver is made knowingly and intelligently. <u>Faretta v. California</u>, 422 U.S. 806, 835 (1975). "Waiver of the right to counsel, as of constitutional rights in the criminal process

8

generally, must be a knowing, intelligent act done with sufficient awareness of the relevant circumstances." Iowa v. Tovar, 541 U.S. 77, 81 (2004). A waiver is knowing and intelligent "if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances—even though the defendant may not know the specific detailed consequences of invoking it." United States v. Ruiz, 536 U.S. 622, 629 (2002). "The information a defendant must possess in order to make an intelligent election, our decisions indicate, will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding. Iowa v. Tovar, 541 U.S. at 88.

At the first trial, DNA analyst Tabitha Ann Bullock testified that, on the victim's underwear, she found a DNA profile consistent with Mr. Kocielko's DNA profile. Tr. 163-64. She described the four-step method for reaching her conclusion, which included extraction, quantification, amplification, and polymerase chain reaction analysis. *Id.* at 157-59. She testified that the chances of the DNA profile occurring were 1 in 3 quintillion in the national African-American population, 1 in 461 quadrillion in the national Caucasian population, and 1 in 1 quintillion in the national Hispanic population. *Id.* at 164-165.

At the conclusion of the first trial, Mr. Kocielko told the trial court that he intended to proceed pro se at the second trial:

> **Trial Counsel:** Mr. Kocielko wishes to discharge me from further service and go pro se at this time.
>
> **The Court:** All right. You want to go pro se, is that correct?
>
> **Kocielko:** Yes, sir.

\* \* \*

**The Court:** Mr. Kocielko, if you elect to represent yourself, number one, I don't think that's a good idea. I believe that a person who is charged with a serious criminal offense should be represented by counsel. If I were charged with a crime of any magnitude, I would hire a lawyer, and I was a deputy prosecutor for 20 years, I was a public defender for two years and I have been a judge of this court for 11 years. I know a lot about the criminal law. I'd still hire a lawyer to represent me. I would never attempt to represent myself. If you can't afford a lawyer, I will be hap -- and you want counsel appointed to represent you, I'll be happy to conduct an indigency hearing and if I determine that you are indigent, I will appoint a lawyer to represent you. If you persist in your desire to represent yourself, I have no reason to believe you're incapable of doing so and I will permit it assuming that I agree -- that you are capable of doing so. But, you will be held to the same standards that a lawyer must -- the same standards of those which apply to a lawyer.

So you're going to have to abide by the court rules. You're going to have to follow those rules when you file pleadings and you're going to have to serve opposing counsel with those pleadings. Do you understand what I'm saying?

**Kocielko:** I do.

**The Court:** Do you intend to represent yourself?

**Kocielko:** Umm, I'm going to confer with my family and on November 8, I'll give you an answer to what --

**The Court:** Pardon?

**Kocielko:** I said on November 8 at our conference, I'll give you an answer as to how I wish to proceed with this.

**The Court:** Very well.

*Id.* at 636-40. Eight days later, at the next status conference, Mr. Kocielko again asserted his intent to proceed pro se:

**The Court:** Do you intend to hire counsel to represent you in connection with this matter?

>**Kocielko:** As of today, I just wish to proceed pro se.
>
>**The Court:** I'll give you the same admonition that I gave to Mr. McKnight. I believe you are making a serious mistake. If you proceed pro se, I will hold you to the same standards that I would hold a practicing lawyer. You are not trained as a lawyer. I cannot be your lawyer. I cannot give you legal advice. I won't give you legal advice. If you make a mistake, I won't tell you how to fix it. If you want to accomplish something and don't know how to achieve it, I won't tell you. If I were to do those things, I would be acting as your lawyer. That is an impermissible role for the trial judge.
>
>As I also told Mr. McKnight, I consider myself to be quite knowledgeable on Indiana criminal law due to my experience and my education. In spite of that fact, if I were in your position, charged with a Class B felony, I would hire a lawyer to represent me, because I know that there is a lot of truth old saying that a person who represents himself has a fool for a client. I strongly advise against it. At this point, I'm willing to permit it. I recall that DPA Snyder said that a prior case which you, in which you were involved resulted in a conviction that was reversed on appeal, because you represented yourself in a conviction that was reversed on appeal, because you represented yourself in that case, and you were found incompetent. If that is accurate, I may change my ruling. But it's your -- at this point, in spite of my advice, it's your desire to proceed pro se; is that correct?
>
>**Kocielko:** Yes, sir, it is.
>
>**The Court:** All right. At this point, I'll allow it.

*Id.* at 644-46.

At the second trial, Tabitha Ann Bullock and Michael Raymond, another DNA analyst, testified regarding the presence of DNA on the victim's underwear. *Id.* at 1647-1670, 1674-1685. Their testimony at the second trial substantially resembled Ms. Bullock's testimony from the first trial with respect to the methodology and the conclusions of the DNA analysis. *Id.*

On direct appeal, the Court of Appeals of Indiana rejected Mr. Kocielko's argument that he wasn't sufficiently warned about DNA evidence for purposes

11

of waiving his right to trial counsel. ECF 6-5 at 12-14. The appellate court noted that DNA evidence was presented at the first trial and that the trial court repeatedly warned Mr. Kocielko of the risks of self-representation. *Id.* The appellate court also noted that the trial court gave Mr. Kocielko time to consult with his family and that Mr. Kocielko had prior experience with criminal proceedings. *Id.*

After reviewing the record, this court can't find that the State courts made an unreasonable determination by deciding that Mr. Kocielko knowingly and intelligently waived his right to trial counsel. Mr. Kocielko observed the first trial and was thus generally aware of how the second trial would proceed when he waived his right to trial counsel. DNA evidence presented at the first trial was substantially similar to the DNA evidence presented at the second trial, which suggests that Mr. Kocielko should have anticipated the DNA evidence presented at the second trial even without a specific warning from the trial court. Mr. Kocielko had prior experience with criminal proceedings, including prior felony convictions on two separate occasions. Appeal App. 989, 1001. Given the circumstances, the trial court's statements sufficiently informed Mr. Kocielko of the dangers of proceeding pro se at the second trial. Mr. Kocielko's claim that he did not knowingly and intelligently waive his right to trial counsel is not a basis for habeas relief.

### Request for DNA Expert

Mr. Kocielko argues that the State courts made an unreasonable determination by denying his request for funds for a DNA expert. He argues that

the absence of a DNA expert prejudiced his ability to effectively cross-examine the prosecution's DNA expert witnesses. This court's scope of review is limited to whether the State courts made an "unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Fourteenth Amendment Due Process Clause's guarantee of fundamental fairness entails an indigent criminal defendant's right to appointed counsel for criminal trial and direct appeal, Gideon v. Wainwright, 372 U.S. 335 (1963); Douglas v. California, 372 U.S. 353 (1963), as well as the right to a psychiatric expert if "sanity at the time of the offense is likely to be a significant factor at trial." Ake v. Oklahoma, 470 U.S. 68 (1985). However, the Supreme Court has never determined that indigent criminal defendants are entitled to DNA experts. In the absence of applicable clearly established federal law, Mr. Kocielko's claim that the State courts improperly denied him funds for a DNA expert is not a basis for habeas relief.

## CERTIFICATE OF APPEALABILITY

Under Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000). For the reasons explained in this opinion for denying habeas corpus relief, there

is no basis for encouraging Mr. Kocielko to proceed further. For the same reasons, he may not appeal in forma pauperis because an appeal could not be taken in good faith.

For these reasons, the court DENIES the motion for discovery; DENIES the habeas corpus petition; DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; DENIES leave to appeal in forma pauperis pursuant to 28 U.S.C. § 1915(a)(3); and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED on April 5, 2018

/s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT